[No. 722.]

## JAMES T. QUIGLEY, Respondent, *v.* CENTRAL PACIFIC RAILROAD COMPANY, Appellant.

Removal of Cause to Federal Court—Act of Congress of March 25, 1867, Construed.—Under the provisions of the act of congress "approved March 2, 1867," the existence of local prejudice need not be shown. The act only requires the person making the affidavit to state the fact, no reasons therefor need be assigned, as the question whether such bias or prejudice exists is not left to the judicial determination of the court.

Idem—Foreign Corporation.—A corporation is a citizen of the state where it is created, and it can be a "citizen of another state," within the meaning of the words as used in the act.

Idem.—An affidavit made by the vice-president of a corporation "that he has reason to believe, and does believe, that from prejudice and local influence, said defendant corporation will not be able to obtain justice in said court," is insufficient to authorize the state court to transfer the cause to the federal court.

Idem—Affidavit by whom Made.—The affidavit must be made by the party to the suit. It is the belief of the citizen of another state, not the belief of such citizen's agent, that deprives the state court of its jurisdiction.

Idem—Authority of the Corporation to Make the Affidavit.—The question as to the power of a corporation to make the affidavit, discussed: *Held*, the affidavit must state that it is the belief of the defendant, and that the authority from the corporation to make the affidavit must in some manner affirmatively appear.

Corporation Liable for the Wanton Acts of its Agents.—A railroad corporation is liable for the willful, wanton and malicious acts of its

agents, while acting in the course of its business and of their employ-ment, although the act was not directly or impliedly authorized nor rati-fied by the corporation.  (*By Hawley, C. J.*)

IDEM—EXEMPLARY DAMAGES. — The question of exemplary damages dis-cussed in the opinion: *Held*, that under the facts of this case the jury were not warranted in assessing damages as a punishment of defendant independent of the question of full compensation.

EJECTION FROM RAILROAD CAR, WHEN UNLAWFUL.—It is the duty of the agents of a railroad company to ascertain whether a passenger has pur-chased a ticket before ejecting him from the cars; their negligence in this respect cannot be pleaded or urged as a defense, nor considered in mitigation of damages.

IDEM.—If it afterwards turns out that the passenger had a ticket, then no matter how much the agent was mistaken, nor how honestly he may have believed that the passenger had not paid for his ticket, or how little force was used in ejecting the passenger, the act was nevertheless unlawful and wrong, and for any injury which the passenger received on account of such expulsion he is entitled to full compensation in damages.

IDEM—AGGRAVATION OF DAMAGES.—If the agent uses more force than is necessary to eject a passenger, or uses vile epithets toward him, such conduct should always be considered by the jury in aggravation of dam-ages.

IDEM—MEASURE OF DAMAGES.—Where the agent in ejecting a passenger uses no more force than is necessary for that purpose: *Held*, that the passenger is entitled to receive such damages as will fully compensate him for the actual injury inflicted, whether it be to his body or his mind, to his business or loss of time, as well as his actual expenses necessarily incurred in consequence of the unlawful or wrongful act.

IDEM—EXCESSIVE DAMAGES.—Where plaintiff purchased a ticket at Elko for San Francisco, and was ejected from the cars within half a mile from the town of Elko, without sustaining any bodily injuries, the conductor using no more force than was necessary to eject him; was delayed one day, and had to buy another ticket at an expense of $40.50: *Held*, that a verdict of $5000 was so excessive as to indicate passion and prejudice upon the part of the jury.

APPEAL from the District Court of the Ninth Judicial District, Elko County.

The facts are stated in the opinion.

*T. B. McFarland*, for Appellant.

I. The refusal of the court below to grant appellant's pe-tition to remove the cause to the United States Circuit Court was clearly error, for which the judgment should be reversed. (U. S. Statutes at Large, vol. 14, 558; *Stevens* v.

*Phœnix Insurance Co.*, 41 N. Y. 149; *Insurance Co.* v. *Dunn*, 19 Wall. 214; *State* v. *Curler*, 4 Nev. 445; *Caples* v. *Central Pacific R. R. Co.*, 6 Id. 265; *Kanouse* v. *Martin*, 15 How. 198; 14 Id. 23; *Gordon* v. *Longest*, 16 Pet. 97.)

II. Exemplary damages could not be given in this case, and the court below erred in ruling upon all the instructions presented upon that subject. (*Johnson* v. *Wells, Fargo & Co.*, 6 Nev. 224; *Wardrobe* v. *California Stage Co.*, 7 Cal. 118; *Turner* v. *North Beach & Mission R. R. Co.*, 34 Id. 594; Story on Agency, section 456; *Hamilton* v. *Third Avenue R. R. Co.*, 53 N. Y. 25; *Pittsburg, F. W. & Chicago R. R. Co.* v. *Slusser*, 19 Ohio St. 157; *Wright* v. *Wilson*, 19 Wend. 343.)

III. Mental anguish can be considered in estimating damages only where it is an incident to bodily pain, and the court below erred in refusing to give the third instruction asked by appellant's counsel, and refused. (*Johnson* v. *Wells, Fargo & Co.*, 6 Nev. 236.)

IV. Under any view of the case, the amount of the verdict was excessive beyond all reasonable bounds. (*Chicago, B. & Q. R. R. Co.* v. *Parks*, 18 Ill. 460; *Terre Haute & St. L. R. R. Co.* v. *Vanatta*, 21 Id. 188; *Tarbell* v. *C. P. R. R. Co.*, 34 Cal. 616; *Pleasants* v. *N. B. & M. R. R. Co.*, 34 Id. 586; *Chicago* v. *N. W. R. R. Co.*, 48 Ill. 253; *Chicago & Alton R. R. Co.* v. *Roberts*, 40 Id. 503.)

*James Seeley*, for Respondent.

By the Court, HAWLEY, C. J.:

This action was brought by plaintiff Quigley to recover from the defendant, the Central Pacific Railroad Company, damages for an alleged unlawful ejection from defendant's cars.

The jury found a verdict in favor of plaintiff and assessed the damages at $5000. Defendant moved for a new trial which was refused. The appeal is taken by defendant from the judgment and from the order of the district court overruling its motion for a new trial.

Prior to the trial of the case the defendant moved the

court to transfer the suit to the circuit court of the United States for the district of Nevada, in pursuance of the provisions of the amendatory act of congress, "approved March 2, 1867," which provides: "That where a suit  *  * may hereafter be brought in any state court, in which there is controversy between a citizen of the state in which the suit is brought and a citizen of another state, and the matter in dispute exceeds the sum of $500, exclusive of costs, such citizen of another state, whether he be plaintiff or defendant, if he will make and file in such state court, an affidavit stating that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court, may, at any time before the final hearing or trial of the suit, file a petition in such state court for the removal of the suit into the next circuit court of the United States to be held in the district where the suit is pending, and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in said suit, and doing such other appropriate acts as, by the act to which this act is amendatory, are required to be done upon the removal of a suit into the United States court, and it shall be, thereupon, the duty of the state court to accept the surety and proceed no further in the suit." (14 U. S. Stat. at Large, 558.)   The petition and bond filed by appellant state the facts as required by the act.   The petition is signed "Central Pacific Railroad Co., by E. H. Miller, Jr., Secretary," and by the attorneys for defendant.  ·The bond is signed "Central Pacific Railroad Co., by E. H. Miller, Jr., Secretary," and by two sureties."   A seal purporting to be the seal of the corporation is affixed to the petition and bond.   The affidavit is as follows:

"[Title of court and cause.]

       "State of California, City and County of San Francisco, *ss.*

   "Charles Crocker being duly sworn, deposes and says: that he is the second vice-president of the Central Pacific Railroad Company, the defendant in the above-entitled ac-

tion; that Leland Stanford is the president of said company, and Collis P. Huntington is the first vice-president of said company; that said Stanford and Huntington are at the present time in the city of New York, and therefore unable to make this affidavit; that said Central Pacific Railroad Company is a corporation duly organized under the laws of the State of California, having its principal place of business at the city and county of San Francisco, in said state, and is the defendant in the above-entitled action; that said action was brought on or about the fourth day of April, 1874, in the above-entitled court,    *    *    *    that said plaintiff    *    *    *    is and has been since the nineteenth day of August, A. D. 1874, a citizen of the United States residing in the State of Nevada.    And this deponent further says: That he has reason to believe, and does believe, that from prejudice and local influence, said defendant corporation will not be able to obtain justice in said court, and affiant therefore makes this affidavit for the purpose of removing said suit into the circuit court of the United States, for the district of Nevada,    *    *  . in pursuance of the statute in such case made and provided, and further saith not.

"(Duly verified.)          CHARLES CROCKER."

The plaintiff objected to the sufficiency of the petition, bond, and affidavit.    The objections to the petition and bond were made upon the ground that they were not signed by the defendant, and contained no evidence that E. H. Miller, Jr., was authorized by the defendant to sign the same; and the further ground that the seal thereto affixed was not attested, nor in any manner authenticated as the seal of defendant.    The objection to the affidavit, as made in the court below, reads as follows: "Third. That one of the grounds for removal of said cause, as stated in said pretended petition is that one Charles Crocker has reason to believe, and does believe, that from prejudice and local influence, said corporation will not be able to obtain justice in said court.    *That said affidavit is the mere opinion of said Charles Crocker, and does not show that such is the opinion of the defendant; nor does said affidavit show that said*

*affiant has any authority from defendant to make such affidavit;* nor does said affidavit or petition set forth any grounds or reason upon which this court can judicially determine that either bias or prejudice exists in the county of Elko against defendant. Fourth. That said pretended affidavit is without any seal of defendant authenticating said affidavit as being the averment or statement of defendant." The objections to the petition and bond are not well taken. As they were virtually abandoned by respondent's counsel it is unnecessary to further notice them. In the oral argument, counsel for respondent relied upon the objections to the affidavit which we have italicised. It was admitted that if the application conformed to the provisions of the act, the existence of local prejudice need not be shown; and it was so decided in *Meadow Valley Mining Company* v. *Dodds* (7 Nev. 147). The act of congress only requires the person making the affidavit to state the fact. No reasons therefor need be assigned, as the question whether such bias or prejudice exists is not left to the judicial determination of the court. The act of congress is plain and imperative, and leaves nothing to be construed. When the petition, bond, and affidavit are filed as required by the act, it positively declares that it shall be the duty of the state court to accept the security, and proceed no further in the suit. Is the affidavit in other respects sufficient? Must the authority to make the authority be affirmatively shown? The questions presented by the objections are raised for the first time in this state, and are of great importance. No authorities bearing upon the points were cited by counsel on either side, and but few could be found which add any light to the answers that must be given to the questions we have propounded. A corporation cannot, from the very nature of its existence, make the affidavit in person. It has no mind, no reasoning faculties; no power to think, speak, or act, except through its officers, agents, servants, and employees. In what manner, then, can the corporation, if at all, make such an affidavit as will be sufficient to authorize the removal of a cause under the act of congress under consideration.

In the case of the *Meadow Valley Mining Company* v. *Dodds*, *supra*, the affidavit was made by the superintendent of the corporation, and Lewis, C. J., in delivering the opinion of the court, said: "The application in all respects conformed to the provisions of the act;" but the point here urged was not there relied upon, and hence the remark quoted 'cannot be considered as an authority in favor of the sufficiency of · the affidavit. An examination of that case shows that it was there admitted that the affidavit was "sufficient in all respects, except that it does not set out the facts upon which the appellant bases his belief that such local prejudice existed that he could not obtain justice." This, together with the constitutionality of the act, were the only questions considered and passed upon by the court. As the act of congress takes from the state court the power to judicially determine whether or not any local prejudice exists that would prevent the moving party from obtaining justice, it ought to be strictly construed. "The character of the act, its object, and its effect upon litigation in the state courts," as was said by the supreme court of New York, "is not such as to call for a liberal construction of its privileges. On the contrary, it should be strictly construed, and a party seeking to avail himself of its privileges, must come clearly within its provisions." (*Cooke* v. *The State National Bank of Boston*, 1 Lansing, 501.) In this case, the question whether a corporation could make the affidavit was referred to, but not decided. Ingraham, J., in delivering the opinion of the court, said: "There is also one objection made to the fact, that the statute does not apply to a corporation, because a corporation cannot make the affidavit required, and the belief of other persons than the defendant is not a compliance with its provisions. The objection is not without weight; and it may well be doubted whether an affidavit, made by one or more of the directors, is a compliance therewith; but it is unnecessary to decide on that question." This *dictum* was expressed in a case where the affidavit for removal was made by the president and nine directors of the corporation. The language of the affidavit being: "We also, each for himself, severally do declare, and upon oath

say, that we have reason to believe, and severally do believe, that from prejudice and local influence, the said State National Bank of Boston will not be able to obtain justice in the said suit in the said state court." This cause was taken up to the court of appeals, and Church, C. J., in delivering the opinion of the court, upon this point, said: "The last objection to the validity of the removal is, that a corporation cannot avail itself of the act of 1867 by reason of its incapacity to make the affidavit required by the act. It is urged by counsel that this act confers upon one party extraordinary power over the litigation, enabling it, by an *ex parte* oath of mere belief of the existence of a fact, which cannot be contradicted, and after having the benefit of all the 'law's delay' in the state court, to remove the suit to another court, and that it should be strictly construed, and hence that it should be held to apply to such a party only as is capable of entertaining and expressing a belief, and that the affidavit can in no case be made by any other than the party himself. There is a difference of opinion among the members of the court upon the point; and upon consultation we have concluded, as probably the most conducive to the interests of both parties in facilitating the final disposition of the case, to sustain the objection, and hold that it was not removed." (*Cooke* v. *State National Bank of Boston*, 52 N. Y. 114.)

We think this case goes too far. It is now too well settled to be questioned, that a corporation is a citizen of the state where it is created, and it certainly can be a "citizen of another state" within the meaning of the words as used in the act of 1867. If it is a citizen of another state, by presenting and filing the necessary papers, it would certainly be entitled to have the suit removed. True, the corporation could not, in person, make the affidavit. But, suppose the board of directors at a regular meeting should pass a resolution declaring that the corporation has reason to, and does believe that, from prejudice and local influence, it will not be able to obtain justice in such state court, and authorizes its president, or some other person, to make and file an affidavit of this fact in said court, would this not be suf-

ficient? We think it would. Whether it is absolutely necessary that the authority of the corporation should be given in the manner here indicated need not be determined in this suit. The objection we are considering is based upon the ground that the affidavit, as to the belief, is the mere opinion of Charles Crocker, and not the opinion or belief of the defendant, and our conclusion is that this objection is well taken. We are also of opinion that the authority from the corporation to make the affidavit, must, in some manner, affirmatively appear. In *Mahone* v. *Manchester and Lawrence Railroad Corporation*, which was a suit brought to recover damages for an injury sustained by plaintiff while a passenger in the cars of defendant, the corporation moved for a transfer of the cause from the state to the federal court, under the same act of congress. The affidavit was by the acting and assistant superintendent of the defendant, and the objection here presented was there made and held to be good. The opinion was by a full bench. Gray, J., in delivering it, after referring to the fact that the act had been declared constitutional, and, that in order to authorize a removal, the requirements of the act must be strictly and fully complied with, said: " Among the conditions which the act of congress imposed upon the removal of the case, are that ' such citizen of another state ' shall file a petition for the purpose, and that ' he will make and file ' in the state court ' an affidavit that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court.' The act of congress does not, like our statute for the removal of actions from the superior court upon application of the defendant to this court for trial, authorize the affidavit to be made by the party or by any person in his behalf. * * * Congress may well have thought it not too great a security against abuse of the power of removal, to require the party's own affidavit to a fact of such a nature, and of which no further proof is to be made at any stage of the proceedings. Whatever may be the reasons, the words of the statute are explicit, and require the affidavit, as well as the petition, to be the act of the party. (*Anon* 1 Dillon, 298, note; *Hersch-*

*feld* v. *Clarke*, 11 Exch. 712.) · When, as in this case, the petitioner for removal is a corporation, the petition may doubtless be signed and the affidavit made by some person authorized to represent the corporation. But the authority of any person assuming to represent it must appear." (111 Mass. 75.)

It might be urged that inasmuch as no officer of a corporation, unless specially authorized, has power to bind the corporation except in the discharge of his .ordinary duties, and inasmuch as it is no part of the ordinary duties of the superintendent of a railroad to represent the corporation in judicial proceedings, that a distinction ought to be drawn between the case referred to and the one under consideration, where the affidavit is made by the acting president, who is at the head of the corporation, and invested with greater power than any other officer. This question was mooted in the Massachusetts case, and the language we have quoted from the opinion, may be considered as modified to some extent, from the fact that it appeared from the bill of exceptions in that case "that Hildreth, by whom the petition for removal was signed, and the affidavit in support thereof made, had no authority except what was incident to his office as assistant and acting superintendent of the defendants," and for this, as well as the other reasons given in the opinion, it was held, "that the petition and affidavit were not the acts of the corporation." But from the view we take of this question and the gist of the objection made and authorities cited, this distinction as to the ordinary duties of the respective officers of a corporation makes no difference. The objection is, that the individual belief of an officer or agent of a corporation does not answer the positive requirements of the statute. The affidavit must be made by the party to the suit. It is the belief of the "citizen of another state," not the belief of such citizen's agent, that deprives the state court of its jurisdiction. As the affidavit in this case did not conform to the requirements of the act of congress the court did not err in proceeding with the trial of the case.

2. At the trial plaintiff testified, that he applied to the

ticket-agent of defendant for a ticket from Elko to San Francisco, and procured from the agent a ticket numbered 1496, paying therefor the sum of forty dollars and fifty cents. There is some controversy as to what transpired at the ticket-office. Mr. Pixley, the agent, testifies, that after the money had been paid, and at plaintiff's request, he went to the ticket case and took out a ticket, and, as he stamped it, saw by the number that plaintiff had got his ticket; that he laid the ticket on the counter not intending to deliver·it to plaintiff; that he told plaintiff he could not deliver to him another ticket, and that thereupon the plaintiff took the ticket, and refused to return it. Plaintiff denied having more than one ticket; the agent contended that he had given him a ticket numbered 1495, and that he had no right to the ticket No. 1496. The ticket-agent, prior to the departure of the cars, informed the conductor of the train of what had happened, and the conductor requested the plaintiff to return ticket 1496. When the train started, the ticket-agent undertook to prevent the plaintiff from getting on the cars, and told him he could not ride on that ticket. Plaintiff threw his baggage on the cars and got on the train while it was in motion. When the conductor demanded his ticket he gave him ticket No. 1496. Thereupon the conductor requested him to get off the cars, stating as a reason for such request, that plaintiff had not paid for that ticket. A colloquy occurred; the plaintiff, as he testifies, wishing to explain about the misunderstanding at the office, and the conductor insisting that he did not wish to listen to any explanation. The result was,. that plaintiff, against his remonstrance, was forcibly ejected from the defendants' cars by the conductor. No more force was used than was necessary to accomplish the purpose. Plaintiff was ejected at a point on the road distant from Elko over a quarter of a mile. After plaintiff was ejected he again got on the cars for the purpose of getting his valise, and, as he states, at this time the train was running so fast that he was afraid to get off. Plaintiff asked the conductor to let him ride to Carlin (the next station on the road), and stated that if he could not satisfy him that they had no right to put him off

the cars, he would get off. The conductor refused to let him ride to Carlin. Neither the ticket or the money was returned to plaintiff. Plaintiff, on account of his expulsion from the cars, was delayed one day, and had to buy another ticket, paying therefor the sum of forty dollars and fifty cents. There was some testimony tending to show that the conductor was angry, and that the conversation between the conductor and plaintiff was of such a character as to attract the attention of the passengers on the cars.

It is admitted by counsel for appellant that the act of the conductor in ejecting plaintiff from the cars was within the scope of his authority, in the prosecution of the business entrusted to him by defendant, and that if the act was unwarranted and unlawful, the defendant was liable in damages therefor, notwithstanding the fact that the conductor acted in good faith, in the honest belief that the plaintiff had no right to a passage upon ticket No. 1496. But it is argued that the corporation is not responsible for the wanton or malicious acts of its servants; that in such cases the corporation cannot be held liable in exemplary or punitive damages, and that the court therefore erred in submitting this question to the jury in the following instructions: "First. The jury are instructed that a corporation is liable to exemplary damages for such acts, done by its agents or servants, acting within the scope of their employment, as would if done by an individual acting for himself, render him liable for such damages."

"Second. The jury are instructed that for acts done by the agents of a corporation, either *in contractu* or *delicto*, in the course of its business and of their employment, the corporation is responsible as an individual is responsible in similar circumstances."

"Fifth. If the jury believe, from the evidence, that the plaintiff did purchase, pay for, and receive from defendant, at Elko, a first-class passenger ticket, issued by defendant as a permit to the owner to ride upon its passenger cars from Elko to San Francisco; and that defendant took from plaintiff said ticket whilst plaintiff was on said cars as a passenger, *en route* to San Francisco, and forcibly ejected

plaintiff from its said cars; and that such acts of defendant were done wantonly or maliciously, or with a reckless disregard of the rights of plaintiff, then the plaintiff is entitled to recover exemplary damages."

While there is some conflict in the decided cases, we are of opinion that the weight of reason and authority is decidedly in favor of the rule that a corporation is liable for the wanton and malicious acts of its agents. If the agent or servant of a corporation assaults a stranger, the corporation is not in any way liable; but the rule is different where the assault is made upon a passenger of the corporation. It is the duty of every railroad corporation to carry its passengers safely, and to treat them respectfully. They should protect their passengers from violence and insult, and are bound to use such reasonable precautions as human judgment and ordinary foresight are capable of, in order to make the journey safe and comfortable. In the language of the authorities they are bound to protect their passengers not only against the violence and insults of strangers and copassengers, but *a fortiori*, against the violence and insults of their own conductors, agents and servants, and if this duty is not performed, they should, of course, be held responsible. In Angell & Ames on Corporations, the authors say: "A distinction exists as to the liability of a corporation for the willful tort of its servant towards one to whom the corporation owes no duty, except such as each citizen owes to every other, and that towards one who has entered into some peculiar contract with the corporation, by which this duty is increased. Thus it has been held that a railroad corporation is liable for the willful tort of its servants whereby a passenger on the train is injured." (Sec. 388.)

Mr. Redfield, in reviewing the decision of the court in *Hagan* v. *Providence and Worcester Railroad Co.*, 3 Rhode Island, 88, wherein the court had declared that the corporation could not be held liable for the wanton and malicious acts of its agents unless it participated in the wrongful act of its agent or expressly or impliedly authorized, or approved it, said: "But upon principle, it would seem that if the agent was so situated as to represent the company in

the particular transaction, and for the time, they should be liable to the same rule of damages as the agent, although the form of action may be different. If the act is that of the company, they should be held responsible for all its consequences, and there seems quite as much necessity for holding the company liable to exemplary damages as their agents. It is difficult to perceive why a passenger, who suffers indignity and insult from an inexperienced or incompetent conductor of a train, should be compelled to show the actual ratification of the act of the conductor, in order to subject the company to exemplary damages, if the transaction was really of a character to demand such damages, and the company are liable at all." (Red. on Railways, Vol. 2, sec. 187, note.) The authorities make the test of the liability of the corporation, not the intention of the servant, but the fact that the injurious acts were done by the servant while engaged in the business of the corporation, and within the scope of his duty as a servant. When the servant acts within the scope of his employment and is engaged in the business of the corporation, in other words, doing what he is employed to do, and violates the rights of a passenger, there is no valid reason why the corporation should not be held responsible for his acts simply because such servant acted willfully, wantonly or maliciously in the commission of the act.

In *Goddard* v. *The Grand Trunk Railway of Canada*, the court review at length the authorities, and in concluding upon this point, say: "The law requires the common carrier of passengers to exercise the highest degree of care that human judgment and foresight are capable of, to make his passenger's journey safe. Whoever engages in the business, impliedly promises that his passenger shall have this degree of care. In other words, the carrier is conclusively presumed to have promised to do what, under the circumstances, the law requires him to do. * * * If the passenger does not have such care, but on the contrary is unlawfully assaulted and insulted by one of the very persons to whom his conveyance is intrusted, the carrier's implied promise is broken, and his legal duty is left unperformed,

and he is necessarily responsible to the passenger for the damages he thereby sustains. The passenger's remedy may be either in assumpsit or tort, at his election. In the one case, he relies upon a breach of the carrier's common law duty in support of his action; in the other, upon a breach of his implied promise. The form of the action is important only upon the question of damages. In actions of assumpsit the damages are generally limited to compensation. In actions of tort the jury are allowed greater latitude, and, in proper cases, may give exemplary damages." (57 Maine, 217.) The court then cited numerous authorities to show that the doctrine of exemplary damages is sanctioned by the rules of the common law; that its existence as a fundamental rule of the law, has been recognized in England for more than a century, and that in this country, notwithstanding an early and vigorous opposition, it has steadily progressed, and that the decisions of the courts are now nearly unanimous in its favor.

The following authorities sustain the proposition that a corporation is liable for the willful, wanton and malicious acts of its agents, while acting in the course of its business and of their employment, although the act was not directly nor impliedly authorized nor ratified by the corporation; and, where the question is considered that the corporation in such cases is liable in exemplary damages. (*Moore* v. *Fitchburg Railroad Corporation*, 4 Gray 465; *Philadelphia and Reading Railroad Company* v. *Derby*, 14 How. 468; *The Pennsylvania Railroad Company* v. *Vandiver*, 42 Penn. Stat. 365; *Weed* v. *The Panama Railroad Company*, 17 N. Y. 362; *Dalton* v. *Beers*, 38 Conn. 529; *Hopkins* v. *The Atlantic and Saint Lawrence Railroad*, 36 N. H. 9; *The Baltimore and Ohio Railroad Company* v. *Blocher*, 27 Md. 277; *Pittsburg, Fort Wayne and Chicago Railroad Company* v. *Slusser*, 19 Ohio Stat. 157; *Atlantic and Great Western Railway Company* v. *Dunn*, 19 Id. 162; *The Philadelphia, Wilmington and Baltimore Railroad Company* v. *Quigley*, 21 How. 202; *Storey on Agency*, sec. 452; *Hanson* v. *European and North American Railway Company*, 62 Maine, 84; *The New Orleans,*

*Jackson and Great Northern Railroad Company* v. *Hurst*, 36 Miss. 660.)

But while this rule is, in our judgment, correct, we find quite a diversity of opinion as to what is really meant by the term "exemplary damages." Mr. Sedgwick, after discussing the question of compensatory damages, says: "Thus far we have been speaking of the great class of cases where no question of fraud, malice, gross negligence, or oppression, intervenes. Where either of these elements mingle in the controversy, the law, instead of adhering to the system, or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, blends together the interest of society and of the aggrieved individual, and gives damages not only to recompense the sufferer, but to punish the offender. This rule * * * seems settled in England, and in the general jurisprudence of this country." (Sedgwick on Damages, ch. I, mar. p. 38; ch. XVIII, 464, *et seq.*) In many of the authorities cited in support of this view, it is stated that exemplary or punitive damages can only be given where, in the character of actions like. the one under consideration, the injury to the passenger is the result of the wanton or malicious acts of the agents of the corporation committed in reckless or willful disregard of the rights of the injured party. In the language of these authorities it is only in the extreme cases, where the law blends the interests of the party injured with the interests of the public, that the jury are permitted to give such damages, not only to compensate the injured party, but also to punish the defendant in order that it may serve as a warning and example to others.

Mr. Greenleaf takes an entirely different view of this question. "Damages," says this author, "are given as a compensation, recompense, or satisfaction, to the plaintiff, for an injury actually received by him from the defendant. They should be precisely commensurate with the injury; neither more nor less; and this whether it be to his person or estate." (Vol. II, Greenleaf on Ev., sec. 253, and authorities there cited, and reviewed in a note to this section.)

In *Fay* v. *Parker* (53 N. H. 342), the supreme court adopt the views expressed by Mr. Greenleaf, and in a very elaborate and able review of the authorities, both in England and in the United States, argue that upon principle it is established that the plaintiff in any civil action founded upon a tort, punishable by the criminal law, cannot recover exemplary, punitive, or vindictive damages in order to punish the defendant. But that in such actions the plaintiff is entitled to recover an amount of damages equal to the full compensation of the plaintiff for the injuries sustained by him. That damages mean *loss*, and that the plaintiff can only recover the thing taken away; that "the loss, damage, or thing taken away cannot be supplied or restored by the vindictive punishment of him who has occasioned the loss or damage."

Foster, J., in delivering the opinion of the court, shows that in many of the decided cases the words exemplary, vindictive, and punitive or punitory (all meaning the same thing), have been used indiscriminately in cases where the injuries inflicted were such as to call for damages of a compensatory character purely, but aggravated by the peculiar circumstances of the parties and the occasion, and he insists that these terms only mean that the jury can consider the aggravation in fully compensating plaintiff for his loss and injury, and not as a punishment for defendant; that these terms mean compensatory damages — nothing more or less, and have reference only to such damages as are thus spoken of by Greenleaf: "It is frequently said, that in actions *ex delicto*, evidence is admissible in *aggravation* or in *mitigation*, of damages. But this, it is conceived, means nothing more than that evidence is admissible of facts and circumstances which go in aggravation or in mitigation of the *injury itself*. The circumstances, thus proved, ought to be those only which belong to the act complained of. The plaintiff is not justly entitled to receive compensation beyond the extent of his injury, nor ought the defendant to pay to the plaintiff more than the plaintiff is entitled to receive." (2 Greenl. Ev., sec. 266.) Without any further reference to the respective views of these distinguished au-

thors, we think it must be admitted that judges have very often, in giving instructions, or in writing opinions, used the terms exemplary, punitive, vindictive, and compensatory damages in such a manner as to confuse, rather than to enlighten, the profession upon the subject; and it is not, perhaps, an easy task to lay down definite rules by which juries are to be guided in all cases. It should, however, be the duty of *nisi prius* courts, as far as possible, to prevent the jury from acting upon improper theories as to what should be regarded by them in estimating the elements which go to make up the *quantum* of damages which plaintiff is entitled to recover. We are of opinion that the facts of this case did not warrant the jury in assessing damages as a punishment of defendant, independent of the question of full compensation, and it does not appear from the instructions given that they were expressly authorized so to do. Whether such damages can be assessed in any case of tort to the person is a question of great importance, which ought to be decided by, or at least submitted to, a full bench, and as the decision of this question is not necessarily involved in the decision of this case, it need not be, and is not, here determined.

We have, in another part of this opinion, considered the rights of the plaintiff as a passenger upon the cars, and the duties of defendant as a common carrier. It is, undoubtedly, true that if the plaintiff paid for and received ticket No. 1495, and afterwards received ticket No. 1496 without paying any consideration therefor, then, in the language of one of defendant's instructions as given by the court, "he had no right to ride thereon; and unless he produced the first-mentioned ticket, or paid his fare to the conductor, the conductor was justified in ejecting him from the car, and was authorized to use such force as necessary for that purpose."

But in ejecting plaintiff from the cars without knowing whether he had paid for the ticket No. 1496, the defendant acted at its peril. If the facts were, as the jury afterwards found, that plaintiff had paid for a ticket and only received ticket No. 1496, then he had the unquestioned right to ride on the cars without molestation from any one. It was the duty

of defendant's agents to ascertain the facts before they took the responsibility of ejecting plaintiff from the cars. Their negligence in this respect cannot be pleaded or urged as a defense; nor considered in mitigation of damages. The risk was with defendant, and if it afterwards turned out that it acted upon an erroneous impression as to the facts, then, no matter how much its agent was mistaken, nor how honestly he may have believed that plaintiff had not paid for his ticket, or how little force was used in ejecting the plaintiff, the act was nevertheless unlawful and wrong, and for any injury which the plaintiff received on account of such expulsion he is entitled to full compensation in damages. If the conductor had used more force than was necessary to eject the plaintiff, or had used vile epithets toward him, then such conduct upon his part should be considered by the jury in aggravation of the damages. But if the act of ejection was unwarranted by the facts, then, although the conductor may have acted with the true courtesy and politeness of a Chesterfield, using no more force than was necessary to accomplish his purpose, the defendant, if plaintiff was wholly without fault, would be legally responsible for all the injuries necessarily resulting to plaintiff on account of the unlawful act of the conductor.

3. This view of the case brings us to the consideration of the question whether the court erred in refusing to give the several instructions asked by defendant's counsel, which tended to limit the amount of damages that plaintiff was entitled to recover, to the price of another ticket, and compensation for one day's loss of time. These instructions were to the effect, that if the jury believed, from the evidence, that the plaintiff purchased and paid for ticket No. 1496; but that the agent and conductor honestly believed, and had good reason to believe that he had not paid for said ticket, and that the defendant's agent used no more force than was necessary in ejecting plaintiff from the cars, and did not make any unnecessary disturbance to attract the attention of the passengers in so doing, "then," as stated in the second instruction, "the plaintiff * * * is only entitled to recover such damages as he may have sus-

tained by reason of said ejectment." Again, in the sixth instruction it is claimed that "the measure of damages would be the cost of the plaintiff's ticket and his necessary expenses while he was detained at Elko, with the lawful interest upon both amounts, and the value of his time while he was so detained." And in the third: "The jury are instructed that mental anguish or pain of mind cannot be considered as a distinct element of damage. Pain of mind or mental anguish as an element of damages can only be considered in connection with bodily suffering, and when there has been none of the latter, the jury should not consider the former." The defendant, in support of these instructions, principally relies upon the case of *Johnson* v. *Wells, Fargo & Co.* (6 Nev. 224), and if this opinion, in so far as it declares that pain of mind or injury to plaintiff's feelings cannot be considered "aside and distinct from bodily suffering," is correct, and is applicable to a case like the one under consideration, the instructions ought to have been given.

In *Johnson* v. *Wells, Fargo & Co.*, the plaintiff was a passenger upon defendant's stage-coach, and received bodily injuries by the upsetting of the coach, through the negligence of the defendant. The instruction which was there given authorized the jury in estimating the damages to take into consideration "the bodily suffering of the plaintiff, his pain of mind," etc., etc. The objections were to the words "his pain of mind," and a majority of the court held that the plaintiff was not entitled to any damages for "his pain of mind, aside and distinct from his bodily suffering."

A careful examination of all the authorities cited and reviewed in *Johnson* v. *Wells, Fargo & Co.*, and of the subsequent cases of *Pennsylvania and Ohio Canal Co.* v. *Graham*, 63 Penn. St. 290; *Smith* v. *Holcomb*, 99 Mass. 552; *Holyoke* v. *Grand Trunk Railway*, 48 N. H. 541; *Matheson* v. *New York Central R. Co.*, 62 Barb. 364; *Smith* v. *Overby*, 30 Geo. 241; *Cox* v. *Vanderkleed*, 21 Ind. 164; *Gould* v. *Christianson*, B. &. H. 507; *Cooper* v. *Mullins*, 30 Geo. 152, and *Fay* v. *Parker*, *supra*, which bear more or less upon the point decided, has convinced me that the instruction in *Johnson* v.

*Wells, Fargo & Co.*, in the particulars referred to, was correct. But whatever the differences of opinion may be in actions like that of *Johnson* v. *Wells, Fargo & Co.*, there ought not, in my judgment, to be any controversy that in a case like the present, the measure of damages in the instructions under review is not properly stated.

It is a well settled principle of law, recognized by all of the authorities, that if the plaintiff is bodily injured by the wrongful act of the defendant, he would be entitled to compensation for such an injury. The theory upon which such compensation is allowed being that the injured party, himself without wrong, is entitled to compensation for all the injuries naturally and necessarily resulting from the wrongful act of the party who caused the injury. In such cases the jury are authorized to give such damages as will make the injured party whole for all the injuries resulting directly from the wrongful and unlawful act, without any regard to the motives that may have induced the commission of the act. This rule is certainly founded upon the plainest principles of natural justice, for, even, as between innocent parties if an injury has occurred and damages been sustained, he that caused the injury must bear its consequences. If it be true that an injured party may be indemnified against the physical suffering, why not against mental suffering as well? The humiliation and mortification of being publicly, as well as forcibly, ejected from the cars upon which plaintiff, if he had paid his fare, and otherwise properly conducted himself, had a right to ride, is as much an injury to his person as if he had received bruises upon his body and suffered physical pain. Take for instance a case of assault and battery committed on the person by pulling plaintiff's nose or spitting in his face, the object being solely to degrade him. What is the actual injury? Is it the bodily suffering? Certainly not. That amounts to nothing compared to the injury to his feelings, to his honor, his pride, and his social position. In such a case, would any one question for a moment the right of a jury to give liberal damages to compensate plaintiff for the actual injury received. The principle is the same when applied to the case under consideration. The differ-

ence is only in degree. The principle applies with equal force to all cases, the rule being that plaintiff is entitled to receive such damages as will fully compensate him for the actual injury inflicted, whether it be to his body or his mind, to his business or loss of time, as well as the actual expenses necessarily incurred in consequence of the unlawful, wrongful or negligent act of the party.

In *Hamilton* v. *Third Avenue Railroad Company*, a case almost identical to the one under consideration, the injury complained of being the forcible ejection of the plaintiff from a car of the defendant by the conductor for his refusal to pay the fare demanded from him, the plaintiff claiming that he was not liable for the fare because he had taken passage upon another car of the defendant and paid the entire fare which entitled him to a through passage to the city hall, from which at an intermediate point he was transferred to the one in question. No unnecessary force was used in ejecting the plaintiff, and he sustained no material injury therefrom. The conductor acted in good faith, honestly believing that the plaintiff had no right to a passage unless he paid the fare demanded from him. Upon this state of facts the court say: "It follows that if the plaintiff was entitled to a passage on the car in question without the payment of any additional fare his ejection therefrom was unlawful, and gave him the right to recover from the defendant the damages thereby sustained irrespective of the motives of the conductor in putting him off. This right would not be impaired by showing that the conductor acted in good faith in the honest belief that the plaintiff had no such right, and that he was acting in the strict performance of his duty to the defendant. The act, nevertheless, was unlawful, and being so, the plaintiff had a right to compensatory damages therefor. These included not only compensation for the loss of time and the amount the plaintiff was obliged to pay for passage upon another car, but in addition thereto the injury done to his feelings might be taken into consideration by the jury and a suitable recompense given therefor." (53 N. Y. 28.)

In *Smith* v. *Pittsburgh, Fort Wayne & Chicago Railway*

*Company*, *supra*, similar to the case above cited, the majority of the court were of opinion, "that injuries to the person, whether they consist of mental or physical pain, as well as loss of time or property, which naturally and necessarily result from the wrongful and deliberate act of the defendant, are proper subjects for the consideration of the jury in their estimate of compensatory damages." McIlvaine, J., in delivering the opinion of the court, after stating that bodily pain, caused by an act of trespass on the person, constituted a legitimate ground for compensatory damages, said: "And why should not mental suffering as well? Is it more endurable than physical suffering? Is it a less probable consequence of a trespass against the person of another? Is the mind an object of less concern in the judgment of the law than the body? Is it any less a part of the person? Is compensation in money for mental suffering more difficult to estimate than for physical pain? I can find no good reason for affirming any of these distinctions. Conceding, therefore, that the case made against the defendant would not have justified a verdict for damages beyond the rule of compensation,  *  *  *  a majority of the court are of opinion that there was no error in this charge, to wit: that in estimating the damages 'sustained' by the plaintiff in the premises, 'the injury to the feelings caused by a public expulsion from the cars,' was a proper subject for the consideration of the jury."

4. Upon a careful consideration of the testimony in this case, it is evident that the amount of the verdict could only be sustained, if at all, upon the theory that the jury had a right not only to assess damages in full compensation for the injury which plaintiff actually received; but in addition to award further damages solely as a punishment to defendant, that might serve as a warning and example for the protection of the public. This was clearly erroneous, and even for argument sake admitting that such damages were allowable, the amount of the verdict is so excessive as to indicate passion and prejudice upon the part of the jury. The jury are and ought to be allowed great latitude in assessing damages in actions of this character. They should

award liberal damages in full compensation for the injuries plaintiff received. If the amount of the verdict in this case was not so great as to clearly indicate passion and prejudice upon the part of the jury, we should not disturb it; but it is not the province of courts to enforce the arbitrary edicts of juries, when it is apparent that their verdicts have been influenced by their passions and prejudices rather than by the law and the facts.

Upon the ground that the damages are excessive, the judgment must be reversed and cause remanded for a new trial.

BEATTY, J., concurring:

I concur in the conclusion of the Chief Justice that the judgment in this case must be reversed upon the ground that excessive damages were awarded. But as my conclusion depends upon reasons which are, to some extent, different from those which he has set forth in his opinion, I have thought proper to state, very briefly, my own views of the case.

Upon the first point discussed, I concur in the opinion that the motion to transfer the cause to the United States court was not supported by a sufficient affidavit, and that it was properly overruled for that reason. I doubt, however, if the course suggested as the proper one to have been pursued would have brought the corporation defendant within the terms of the act of congress upon which it relied. That a corporation may, in some manner, avail itself of the provisions of that law has been assumed, without being expressly decided, by the supreme court of the United States (19 Wall. 214), and that case is probably binding authority on the state courts. But how a corporation can comply with the conditions of the law is something that has never been pointed out to my satisfaction. If I believed, as was held in the case just referred to, that the law, being of a remedial nature, ought to be liberally construed, I could see how, by the aid of a very liberal construction, its benefits might be extended to a corporation. But I think the opinion generally expressed by the state courts, that its op-

eration should not be aided by construction, is the correct one. On its face the law is manifestly unjust in its provisions, and gratuitously unjust. Judging by my own experience, I venture to say that if the suffrages of the *nisi prius* judges in the different states could be collected, they would declare, with few dissenting voices, that the operation of the law is odiously unfair and oppressive. If such is the case, as I believe it to be, the law certainly deserves no favor from a court of justice, and so far from extending its operation by construction, it should be restricted within the narrowest possible limits. So restricted, it does not apply to corporations. It is true there is no good reason why, if an unfair advantage was to be given to a class of litigants, it should not have been given to corporations as well as to natural persons. But, on the other hand, it is at least equally true that if the terms upon which that unfair advantage can alone be enjoyed are such that a corporation cannot comply with them, no court of justice is called upon to stretch the provisions of the law in order to make it include corporations. It is to be hoped, if this question is ever fairly presented in the supreme court of the United States, the rule of strict construction will be adopted there, and the assumption that corporations stand upon the same footing as natural persons, with respect to this law, repudiated. In the meantime the state courts may have to submit to an ill-advised construction of the law, but in doing so they should not fail to protest against it. This preliminary question disposed of, the case upon its merits appears to me to be an extremely simple one. The plaintiff claims damages for being forcibly ejected from the defendant's cars. The defendant, by its answer, admits that he was so ejected, and justifies the act upon the ground that he had not paid for the ticket which he offered to the conductor. This, in my opinion, relieves the case of one of the questions discussed by the chief justice, viz.: whether the master is responsible for the willful acts of the servant. For there is no pretense that the conductor was actuated by any *express* malice in ejecting the plaintiff, or that he used any unnecessary force, or was guilty of any wanton outrage

to his feelings.    He simply did what he deemed to be his duty to his employers, and they have avowed and ratified the act, making it their own and assuming all the responsibility.

The only question, therefore, which the jury had to decide, in order to determine whether the plaintiff was entitled to recover, was this: Did he or did he not pay for his ticket? If he did he was entitled to a verdict.    If he did not the defendant was entitled to a verdict.    Upon this issue the jury, under proper instructions, found for the plaintiff, and there was abundant testimony to sustain such finding.    The only remaining question was as to the measure of damages, and, in my opinion, this question also was settled by the pleadings.    It seems to be well settled, that for any willful trespass to the person, the injured party may recover what are called exemplary or vindictive damages.    The forcible expulsion of a passenger from a public conveyance when he is rightfully there, necessarily involves a trespass to the person, (in this case, it involved an assault and battery,) and it is a wrong which is inevitably accompanied with more or less of outrage and insult.    No matter how mildly a conductor may behave—no matter how honestly he may be mistaken, a passenger cannot be forcibly thrust out of a car where he has a right to be, without being insulted and outraged in his feelings.    And if there is no excuse for the act, except the mistake of the carrier, and that mistake is solely due to the carrier's negligence, it will be the same as if there was no excuse at all, and the law will imply that the act was malicious.    So in this case, if the plaintiff did pay for his ticket, as the jury have found that he did, the mistake of the defendant cannot be pleaded as an excuse for his expulsion from the cars, and he was entitled to vindictive damages if he was entitled to any damages at all.    That vindictive damages include compensation for the outrage to the feelings is well settled by the authorities, and is not opposed by the case of *Johnson* v. *Wells, Fargo & Co.,* in which this court went no further than to hold that mental pain, as distinct from bodily pain, is not the subject of compensation in a case where the injury is the result of negligence.

This, as I have endeavored to show, is not a case of negligence, but of willful injury, and the correctness of the decision in *Johnson* v. *Wells, Fargo & Co.*, may be conceded without any impeachment of the rulings of the district court upon the instructions relating to the rule of damages in this case.

As to the question, whether a jury in awarding vindictive damages can go beyond a full compensation to the plaintiff for his pecuniary loss, and bodily and mental suffering, and add a further sum, by way of punishment to the defendant, for the sake of example, I think the weight of reason and the best considered cases are in favor of restricting the award to compensation to the plaintiff. Of course, the amount of compensation to which he will be entitled will depend, in every case, upon the circumstances of the injury, and in case of gross and wanton outrage, heavy damages would be allowed, which, while they would go to the plaintiff as a compensation, would operate incidentally as a severe punishment to the defendant. In this sense, and in this sense only, in my opinion, is it proper to say that a defendant may be punished by vindictive damages.

It is for these reasons that I concur in the opinion that the amount of damages awarded in this case evinces passion and prejudice on the part of the jury. If the injury complained of had been attended by any special circumstances of wanton injury, five thousand dollars might not have been an extravagant verdict; but considering the facts proved, it certainly was excessive.

Earll, J., having been of counsel in the court below, did not participate in the foregoing decision.